

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

**Philip A. Rovner**
Partner
Attorney at Law
provner@potteranderson.com
302 984-6140 Direct Phone
302 658-1192 Firm Fax

October 1, 2020

**BY CM/ECF**

The Honorable Richard G. Andrews
U.S. District Court for the District of Delaware
U.S. Courthouse
844 North King Street
Wilmington, DE 19801

      Re:   *GEMAK Trust v. Church & Dwight Co., Inc.,*
              D. Del. C.A. No. 18-1854-RGA

Dear Judge Andrews:

      This firm, together with Proskauer Rose LLP, represents Defendant Church & Dwight, Co., Inc. in the above-referenced matter. We write to address Plaintiff's failure to produce critical documents relating to testing that GEMAK has disclosed and relied on to (i) provide amended infringement contentions, and (ii) show that it acted in good faith in bringing this case and continuing to litigate it. Church & Dwight respectfully requests that the Court compel production of complete data, protocols, and results underlying such testing of the accused products.

## Introduction

      The viability of GEMAK's case depends, among other things, on the presence of an ingredient called carboxymethyl cellulose ("CMC") in the accused detergent products. Each claim in the patents-in-suit requires CMC. Yet, none of the accused products contain CMC as an ingredient. Technical documents, including product specifications and documents produced by Church & Dwight and third-party suppliers, further establish that the accused products do not contain CMC. Moreover, Church & Dwight initiated an independent chemical analysis, which confirmed the absence of CMC in the accused products, and shared those results with GEMAK. The accused products simply cannot infringe the patents-in-suit because they do not contain CMC.

      Despite all evidence to the contrary, GEMAK has continued to allege that the accused products contain CMC, relying on two separate categories of testing. *First*, when challenged on its factual basis to proceed with this lawsuit, GEMAK sent a letter to Church & Dwight on September 6, 2019, disclosing test results that purportedly showed CMC in four separate "representative chromatograms." GEMAK claimed these tests showed 1 and 16 parts per billion[1]

---

[1] By way of illustration, the EPA allows for up to 10 parts per billion of arsenic, a highly toxic poison, in drinking water.

of CMC in the accused laundry and dish detergent products, respectively. At the same time, however, GEMAK withheld critical data and information needed to interpret those results and identify the chemical fingerprint of the substance alleged to be CMC. *Second*, GEMAK conducted subsequent testing in August 2020 and relied on those results to provide amended infringement contentions. Conspicuously, GEMAK produced some but not all of the data underlying the tests relied on in its contentions. Again, GEMAK withheld critical information necessary to understand the results, to identify whether the results actually showed the presence of CMC, and to determine the amount of CMC allegedly found in the test samples. GEMAK admits that it has the information sought by this motion but refuses to provide it.

The data, protocols, and results from the testing relied on by GEMAK are not only relevant to the case, but essential for Church & Dwight to understand the basis of GEMAK's contentions and test the veracity of GEMAK's allegations, particularly with respect to the presence of CMC. If the test results and data show what GEMAK alleges, then it would have no legitimate reason to withhold them. Church & Dwight respectfully requests that this motion be granted.

## Factual Background

Church & Dwight wrote to GEMAK on August 7, 2019, explaining that the accused products do not contain CMC. (Ex. A.) The letter attached a chemical analysis from Cambridge Polymer Group, an independent laboratory that tested the accused products using "gas chromatography coupled to mass spectrometry (GC-MS) for a highly specific detection of the chemical fingerprint of CMC." (*Id.* at 5.) The results were unambiguous: "Testing performed found no CMC present in either product." (*Id.*) The technical documents produced by Church & Dwight and third-party suppliers subpoenaed by GEMAK confirm the absence of CMC.

GEMAK responded on September 6, 2019. (Ex. B.) GEMAK wrote that "[i]n response to [Church and Dwight's] letter of August 7, 2019, GEMAK has conducted further testing—in addition to the testing conducted before filing this lawsuit—demonstrating the presence of CMC in the currently accused products." (*Id.* at 1.) GEMAK's letter included test results showing images of four chromatograms that contained peaks (circled in red) allegedly showing the presence of CMC. (*Id.* at 1-3.) GEMAK also stated that it "used calibration curves to quantify the amount of CMC in the bulk product and found 1.3 ppb CMC in the bulk Arm & Hammer 2-in-1 Power PAK Laundry Detergent and 16.8 ppb CMC in the bulk Oxi Clean Dishwasher Detergent." (*Id.* at 2.) Church & Dwight requested the data and results partially disclosed in GEMAK's September 6, 2019 letter. (Ex. C.) GEMAK refused to provide them. (Ex. D.)

On September 3, 2020, GEMAK served "First Amended Claim Charts on Infringement." (Ex. E.) These amended contentions indicated that GEMAK "obtained Church's Accused Products commercially and tested these products" after August 10, 2020. (*Id.* at 5.) The amended contentions stated: "To the extent GEMAK relies on testing data to show that an Accused Product meets a specific claim limitation, GEMAK has produced the data underlying these contentions." (*Id.*) In fact, GEMAK selectively produced some of the underlying data, withholding other data essential to interpreting and understanding the partial test results produced and relied on by GEMAK. Specifically, GEMAK withheld testing protocols and computer fitting results that would have identified CMC, and it produced only a fraction of relevant mass spectra, as Church & Dwight explained in a letter dated September 8, 2020. (Ex. F.)

## Argument

On the subject of its most recent testing, GEMAK acknowledges that it has in its possession the documents sought by this motion, including testing protocols and other underlying data. But GEMAK simply refuses to produce these materials until expert discovery. (Ex. G at 1.) The question is therefore not whether GEMAK should produce the materials sought by this motion, but rather when the materials must be produced.

GEMAK has no legal basis to withhold or delay the production of relevant, fact-based evidence on the issue of infringement. Any evidence relied on in a party's infringement contentions must be produced during fact discovery. *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, No. 1:09-cv-1685, 2010 WL 4537002, at *2 (M.D. Pa. Nov. 3, 2010) ("[W]e conclude that if [plaintiff] relies on the testing data at issue as evidence to support its infringement claims, justice requires that [defendant] has a right to the material in order to defend itself."); *Koninklijke Philips Electronics N.V. v. Zoll Medical Corp.*, No. 10-cv-11041, 2013 WL 812484, at *3 (D. Mass. Mar. 4, 2013) (granting motion to compel "technical information regarding the dates, parameters, and results of the tests referenced throughout [plaintiff]'s preliminary infringement contentions"); *Tillotson Corp. v. Shijiazhuang Hongray Plastic Products, Ltd.*, 244 F.R.D. 683, 693 (N.D. Ga. 2007) (finding "to the extent that the test data supports any of the plaintiff's [infringement] contentions, it must disclose that information now").

Nor can GEMAK shield the early test results that it voluntarily disclosed to Church & Dwight through a selective application of the attorney work product doctrine. GEMAK put its early testing at issue in this litigation by disclosing and selectively relying on those results in an effort to show that it acted in good faith in pursuing this case. Therefore, GEMAK waived any work-product protection. *See Princeton Digital Image Corp. v. Office Depot Inc., et al.*, No. 13-cv-239-LPS, 2017 U.S. Dist. LEXIS 120491, at *9 (D. Del. Aug. 1, 2017) (granting motion to compel where the plaintiff "put privileged communications at issue in th[e] litigation by selectively relying on documents or communications that are privileged attorney-client communications or attorney work product, in an effort to show that it acted in good faith in bringing and litigating the underlying patent infringement suits."). The complete results and underlying data provide the only means by which Church & Dwight can assess the evidentiary basis on which GEMAK brought this suit. Accordingly, Church & Dwight has a substantial need for the data generated by the tests that GEMAK disclosed and relied on in its September 6, 2019 letter. *See Sandvik Intellectual Property AB v. Kennametal, Inc.*, No. 2:10-cv-654, 2011 WL 466696, at *5 (W.D. Pa. Feb. 4, 2011) (granting motion to compel test parameters because testing party could not "withhold such information that is merely factual under the umbrella of the work product doctrine").

Church & Dwight respectfully requests that the Court compel GEMAK to produce all data, protocols, and results from testing voluntarily disclosed and relied on by GEMAK.

Respectfully,

*/s/ Philip A. Rovner*

Philip A. Rovner (#3215)

cc: All Counsel of Record